RENDERED:  JULY 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0315-MR

JUSTIN LAROY BEASLEY                                    APPELLANT

v.              APPEAL FROM WARREN CIRCUIT COURT
HONORABLE JOHN R. GRISE, JUDGE
ACTION NO. 13-CR-00695-001

COMMONWEALTH OF KENTUCKY                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, GOODWINE, AND TAYLOR, JUDGES.

GOODWINE, JUDGE:  Justin Laroy Beasley ("Beasley") appeals from a Warren

Circuit Court order denying his motion for relief pursuant to RCr[1] 11.42.  After

careful review, finding no error, we affirm.

On May 26, 2013, Beasley drove his codefendants, Andrew Graham

("Graham") and Cameron Malone ("Malone") to the Hometown Suites in Bowling

---

[1] Kentucky Rules of Criminal Procedure.

Green. Graham and Malone entered a hotel room and robbed JaShaun Wright ("Wright"). Beasley drove away from the hotel with Malone, but Graham's wife picked him up.

That night, the police interviewed Graham for the first time. He informed police he and Malone entered the hotel room with the intent to buy drugs from Wright. He stated, upon entering the hotel room, Malone pulled a gun on Wright and demanded money, but he had no idea Malone would do so.

The next day, Graham contacted police and gave a different statement. Graham informed police Beasley introduced him to Malone and Beasley drove them to the hotel, but he did not know if Beasley was involved in planning the robbery.

In October 2013, the Warren County grand jury indicted Beasley, Graham, and Malone on first-degree robbery.[2] At some point, the circuit court granted Beasley's motion to sever from the other two defendants.

On February 7, 2014, the Commonwealth made Beasley the first of two plea offers. The Commonwealth offered Beasley a ten-year sentence with parole eligibility at 85% of time served in exchange for pleading guilty to the charged offense, first-degree robbery by complicity.[3] The offer was contingent on

---

[2] Kentucky Revised Statutes (KRS) 515.020 (Class B felony).

[3] KRS 502.020 (Class B felony).

Graham and Malone pleading guilty. On March 17, 2014, the circuit court held a hearing at which Beasley rejected this offer. The Commonwealth stated the sentence would run consecutively with any remaining time from Beasley's indictment in a 2009 case. The circuit court specifically asked if the plea offer was for ten years with parole eligibility at 85%. Beasley's trial counsel responded that the offer was for ten years at 85% instead of the maximum of twenty years at 85%. Beasley acknowledged he understood the offer and potential sentence and rejected the offer to proceed with a jury trial.

In November 2014, Graham went to trial and was found guilty of first-degree robbery. The jury recommended a sentence of ten years. His final sentencing was postponed.

Following Graham's trial, Graham gave another statement to the police. This time, Graham claimed Beasley planned the robbery and talked Graham and Malone into committing it. Based on this new statement, Beasley was granted a continuance, and his trial was postponed.

In March 2015, Graham gave a fourth statement to police. The circuit court indicated Graham "discussed with his attorney the possibility that his statement would help lessen his final sentence." Record ("R.") at 437.

Shortly before Beasley's trial, on May 27, 2015, the Commonwealth offered him a plea deal. The record is not entirely clear as to the exact details of

the offer. According to trial counsel's notes from a jail visit about a week after trial, the offer was for ten years with parole eligibility at 20% of time served. It is unclear whether any conditions were attached to this offer. Beasley rejected this offer and chose to proceed to trial.

Beasley's trial began on June 10, 2015. Pertinent to this appeal, Graham testified at trial.[4] He was in custody at the time and testified wearing an orange jumpsuit. Graham testified that it was Beasley's idea to rob Wright and that he and Beasley discussed the plan to rob Wright with Malone.

On direct examination, Graham's testimony was largely consistent with his third and fourth statements to police, which were made after his trial. The Commonwealth asked Graham if he had been charged in this case and if he received a plea deal for his testimony. Graham responded yes, he had been charged in this case, but no, he did not receive a plea deal.

On cross-examination, trial counsel did not attack Graham's credibility by asking about his motive for his evolving statements to police. Instead, counsel's questioning focused on the inconsistencies between Graham's four statements to police. Counsel also asked Graham about a meeting at Jason Smith's house, which Graham included in his testimony but failed to disclose prior to trial.

---

[4] Graham's testimony was not made part of the video record on appeal.

Malone also testified at Beasley's trial. He testified it was Graham's idea to rob Wright and Graham kept pressuring him to participate until he finally agreed. The night of the robbery, Beasley picked up Malone and went to Graham's house. Beasley stayed outside smoking a cigarette while Malone went inside to talk to Graham. Graham discussed the plan to rob Wright with Malone and gave Malone a gun. Malone said Graham's girlfriend was also part of the plan.

Beasley then drove Graham, Graham's girlfriend, and Malone to the hotel. Malone did not hear Graham tell Beasley where to drive. When they arrived at the front of the hotel, Graham and Malone got out of the car, and entered the hotel room where the robbery took place. After the robbery, Malone ran out of the back door of the hotel where Beasley was waiting in the car. Beasley drove away with Malone and Graham's girlfriend in the car. Graham's girlfriend went back to get him.

Beasley exercised his constitutional right not to testify at trial. However, his recorded statement to police was presented to the jury. In his statement, Beasley admitted to driving Graham and Malone to the hotel but denied being aware of the plan to rob Wright.

A jury found Beasley guilty of first-degree robbery by complicity on June 12, 2015. The verdict form indicates the jury found Beasley guilty because he provided transportation to and from the hotel.

After the Court read the verdict and the jury left the courtroom, Beasley informed the Commonwealth that he wanted the last plea offer of ten years with parole eligibility at 20% of time served. The Commonwealth had withdrawn that offer but offered Beasley the original offer of ten years with parole eligibility at 85% of time served. The sentence was to run concurrently with a sentence for a separate indictment on first-degree trafficking in a controlled substance, which Beasley committed while on bond in this case. Beasley accepted this offer prior to the penalty phase of trial.

After Beasley's trial, Graham was sentenced to a total of fifteen years with parole eligibility at 20% of time served in exchange for his guilty plea to second-degree robbery and tampering with physical evidence. Although Graham had initially only been charged with robbery, he was charged with tampering with physical evidence based on his testimony during Beasley's trial. Malone also pled guilty to second-degree robbery in exchange for a five-year sentence with parole eligibility at 20% of time served.

On August 1, 2016, Beasley filed a *pro se* motion pursuant to RCr 11.42, asserting numerous ineffective assistance of counsel claims. The circuit

court appointed counsel, and on January 31, 2018, counsel filed a supplemental brief and requested an evidentiary hearing.

On January 23, 2019, the circuit court held an evidentiary hearing. Beasley presented trial counsel's testimony. Beasley questioned counsel regarding his cross-examination of Graham, specifically about his failure to ask Graham whether he had been promised anything in exchange for his testimony against Beasley at trial. Counsel testified he questioned Graham about his inconsistent statements to attack his credibility. When asked whether he cross-examined Graham about a potential deal, counsel responded that he thought he did. However, Beasley informed counsel he had not done so.

Beasley also questioned counsel about the Commonwealth's plea offers and the advice given in deciding whether to proceed to trial. There was some confusion regarding the terms of the Commonwealth's plea offers. The Commonwealth's attorney who prosecuted the case testified regarding the offers she made to Beasley prior to trial.

Following the evidentiary hearing, Beasley and the Commonwealth submitted post-hearing briefs. On February 5, 2020, the circuit court denied Beasley's RCr 11.42 motion. This appeal followed.

On appeal, Beasley argues the trial court erred in failing to find trial counsel was ineffective for failure to: (1) cross-examine a key witness for the

Commonwealth regarding whether he believed he would get a plea deal in exchange for his testimony against Beasley; and (2) properly advise Beasley of plea offers made prior to trial. We review a trial court's denial of an RCr 11.42 motion for abuse of discretion. *Miller v. Eldridge*, 146 S.W.3d 909 (Ky. 2004). Abuse of discretion occurs when the court's denial is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

First, Beasley argues trial counsel failed to cross-examine Graham about whether he believed he would get a plea deal in exchange for his testimony against Beasley. We note the video record does not contain Graham's testimony during trial. "It is the responsibility of the appellant to present a complete record to this Court for review. When the record is incomplete, we assume the omitted record supports the trial court's decision." *Graves v. Commonwealth*, 283 S.W.3d 252, 255 (Ky. App. 2009) (citations omitted). However, Beasley does not contest the content of Graham's testimony. Instead, the focus of his argument is whether trial counsel was deficient for failing to question Graham about a possible plea deal.

The record indicates that during Graham's direct examination, the Commonwealth asked whether he had been charged in this case and whether he had received a plea deal in exchange for his testimony. Graham responded he had

-8-

been charged in the case but had not received a plea deal in exchange for his testimony. On cross-examination, trial counsel did not question Graham about whether he anticipated or hoped for a plea offer from the Commonwealth even if one had not been promised. Instead, trial counsel attacked Graham's credibility by questioning him about prior inconsistent statements made to police.

During the evidentiary hearing, trial counsel testified he believed he had questioned Graham about his hope for a plea offer and that it would go towards his motive for testifying against Beasley. However, post-conviction counsel informed trial counsel he had not questioned Graham about his hope for a plea deal. Beasley argues this was not a strategic decision and amounts to ineffective assistance of counsel.

The circuit court found "trial counsel's decision to not explicitly ask Graham about the patent connection between the motive behind his ever-changing statements is an exercise of an attorney's tactical discretion and not the deficiency required by *Strickland*."[5] R. at 445. Even if failure to question Graham about his hope for a plea offer "constitutes deficient performance, such failure appears to have resulted in no prejudice" as "Graham was not the only witness to testify that [Beasley] drove to Hometown Suites." *Id.* The court noted the "jury found

_____

[5] *Strickland v. Washington*, 466 U.S. 668, 669, 104 S. Ct. 2052, 2055, 80 L. Ed. 2d 674 (1984).

-9-

[Beasley] guilty because he provided transportation to and from Hometown Suites, not because he planned the robbery." *Id.*; R. at 99.

To succeed on his claim for ineffective assistance of counsel, Beasley must show: "first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive [him] of a fair trial." *Strickland*, 466 U.S. at 669, 104 S. Ct. at 2055; *Padilla v. Commonwealth*, 381 S.W.3d 322, 326 (Ky. App. 2012). We must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.*, 466 U.S. at 688, 104 S. Ct. at 2065. Our review is "highly deferential," and Beasley "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*

The evidentiary hearing was held nearly five years after Beasley's trial. Trial counsel thought he had questioned Graham about whether he anticipated a plea offer from the Commonwealth in exchange for his testimony, but he had not done so. Even though trial counsel could not recall the questions he asked Graham at trial, we cannot penalize him for his failure to recall details of a trial that occurred five years ago. Instead, we must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*, 466 U.S. at 689, 104 S. Ct. at 2055.

It is undisputed that trial counsel attacked Graham's credibility by questioning him regarding his prior inconsistent statements to police. Trial counsel's decision, at the time, to attack Graham's credibility by focusing on his inconsistent statements instead of asking about Graham's hope for a better plea offer was not deficient. During the evidentiary hearing, post-conviction counsel elicited testimony from trial counsel that it would have been important to ask Graham about his hope for a better plea offer as motivation for his testimony. However, based on our review of the record, Beasley failed to overcome the presumption that trial counsel's decision to focus on Graham's inconsistent statements "might be considered sound trial strategy." *Id.*, 466 U.S. at 668, 104 S. Ct. at 2065.

Furthermore, Graham and Malone gave conflicting accounts of who planned the robbery. The only undisputed fact about Beasley's involvement was that he drove Graham and Malone to the hotel on the night of the robbery. The jury ultimately found Beasley guilty of complicity to first-degree robbery because he provided transportation to and from the hotel, not because he planned the robbery. As such, Graham's credibility was clearly in question because he gave multiple inconsistent statements to police and because he and Malone gave different accounts of who planned the robbery. The fact that trial counsel did not

question Graham regarding his motivation for testifying was not deficient and did not prejudice Beasley in any way.

Second, Beasley argues trial counsel failed to properly advise Beasley of two plea offers made prior to trial. The Commonwealth first made Beasley a formal plea offer on February 7, 2014. Below, there was confusion as to whether trial counsel believed the offer was 10 years with parole eligibility at 20% or 85% of time served. The circuit court's order states trial counsel testified during the evidentiary hearing that he informed Beasley that the first plea offer was for ten years with parole eligibility at 20%, but the offer was ten years at 85%. The circuit court found counsel's advice was incorrect and deficient under *Lafler v. Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). The circuit court further found counsel's advice did not prejudice Beasley because he ultimately accepted the same offer after the jury found him guilty.

However, upon review of a hearing held on March 17, 2014, at which Beasley rejected the February 7, 2014 plea offer, it is clear the Commonwealth, Beasley's trial counsel, and Beasley understood the initial offer to be ten years with parole eligibility at 85% of time served. Beasley, on the record, stated he understood the offer and potential sentence, rejected the offer, and stated his desire to proceed to trial. Thus, based on our independent review, trial counsel effectively communicated the initial plea offer to Beasley.

Beasley also takes issue with trial counsel's advice regarding an informal offer made by the Commonwealth shortly before trial. The circuit court noted the terms of that offer were unclear. Due to the passage of time, no one could recall with certainty the terms of this second offer. However, trial counsel had notes from a jail visit to Beasley days after the trial indicating this offer was for ten years with parole eligibility at 20%.

Beasley argues trial counsel did not advise him that he faced a maximum sentence of twenty years with parole eligibility at 85% of time served. He asserts trial counsel instead promised he would be acquitted or at least be convicted of the lesser crime of facilitation to robbery. However, during the hearing at which Beasley rejected the February 2014 plea offer, Beasley responded he understood the maximum sentence. Furthermore, during the evidentiary hearing, trial counsel testified that he did not promise Beasley he would be acquitted. Instead, counsel advised Beasley the evidence warranted an instruction on the lesser crime of facilitation to robbery, which ultimately happened at trial. Trial counsel also testified he made sure Beasley knew going to trial was the client's decision, and he advised Beasley of the risks of going to trial. Based on our review, Beasley was fully informed of the consequences of rejecting the plea offer and choosing to go to trial.

For the foregoing reasons, we affirm the order of the Warren Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Kara Stinson Lewis
La Grange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Robert Baldridge
Assistant Attorney General
Frankfort, Kentucky