GEER, Judge.
 

 *777
 
 Defendant Archimede N. Nkiam, an alien who had obtained permanent legal resident status in the United States, appeals from an order denying his motion for appropriate relief ("MAR") that, asserted a claim of ineffective assistance of counsel ("IAC") with respect to his guilty plea to two crimes that led to the initiation of deportation proceedings. On appeal, defendant argues that the trial court should have granted his MAR based on
 
 *778
 

 Padilla v. Kentucky,
 

 559 U.S. 356
 
 ,
 
 130 S.Ct. 1473
 
 ,
 
 176 L.Ed.2d 284
 
 (2010), which established that incorrect advice regarding the immigration consequences of a guilty plea may constitute IAC. We hold that the advice provided by defendant's counsel in connection with his plea did not comply with
 
 Padilla.
 
 Because the trial court did not specifically address the prejudice prong of defendant's IAC claim, we reverse the trial court's order denying defendant's MAR and remand for a determination whether defendant was prejudiced by the IAC and such further proceedings as are necessary.
 

 Facts
 

 Defendant was born on 5 January 1990 in the Democratic Republic of Congo ("DRC"). Defendant moved to the United States and settled in Raleigh with his family when he was about 11 years old. Defendant was admitted for an indefinite period as a returning asylee, and he later became a permanent resident of the United States after obtaining a green card.
 

 On 24 February 2012, defendant was arrested in connection with an armed robbery of Jocqui Brown. On 16 April 2012, defendant was charged with having used a knife or pistol to commit armed robbery of Mr. Brown's personal property having a value of $50.00, including a cell phone and a ball cap. Defendant was also charged with conspiring with Terrence Mitchell and Leslie Martine to rob Mr. Brown. Attorney Deonte Thomas, a Wake County public defender, was assigned to represent defendant on the charges, and defendant met with Mr. Thomas several times about his case.
 

 At a hearing on 7 January 2013, defendant appeared in Wake County Superior Court before Judge G. Wayne Abernathy to accept a plea offer that allowed him to plead guilty to aiding and abetting common law robbery, a Class G felony, and conspiracy to commit common law robbery, a Class H felony. After conducting a colloquy with defendant, Judge Abernathy accepted defendant's plea and sentenced him to two consecutive suspended sentences. For the aiding and abetting charge, defendant received a sentence of 13 to 25 months imprisonment, which was suspended and defendant was placed on 24 months of supervised probation. For the conspiracy charge, defendant was placed on an additional 24 months of supervised probation after suspension of a sentence of six to 17 months imprisonment.
 

 Following defendant's guilty plea, the federal government initiated deportation proceedings against defendant. In January 2013, defendant was detained by immigration officials and transported to an immigration holding facility in Atlanta.
 

 *779
 
 On 3 April 2013, defendant filed an MAR asserting IAC that the trial court denied
 
 *865
 
 without a hearing on 1 May 2013. This Court granted defendant's petition for writ of certiorari, reversed the trial court's order, and remanded for an evidentiary hearing. On 15 November 2013, the trial court held an evidentiary hearing at which Mr. Thomas, defendant, defendant's father, and an immigration law expert, Hans Linnartz, testified. Following the hearing, the trial court entered an order making the following pertinent findings of fact.
 

 The trial court found that, following his arrest, defendant received "at a minimum" the following information regarding the immigration consequences of his guilty plea:
 

 a. Defendant was informed by his attorney prior to accepting the plea that there was at least a possibility it could result in his deportation from the United States;
 

 b. Defendant reviewed and answered question # 8 on the Transcript of Plea form with his attorney, indicating that he was a permanent U.S. resident born in Congo, and that he understood his plea of guilty could therefore result in deportation from the country;
 

 c. Judge Abernathy informed Defendant that his guilty plea "would make him subject to deportation," and his attorney responded by confirming that it could result in his deportation.
 

 d. Defendant's attorney stated during the colloquy that he hoped the Defendant would not actually be deported, but also stated "we told him we can't do anything with that."
 

 e. Judge Abernathy directly cautioned the Defendant that: i) his guilty plea could result in deportation; ii) the judge had no control over that in state court; and, iii) he could not make Defendant any promises about what would happen with his potential deportation.
 

 f. During the colloquy, Defendant was asked three different times whether he understood that his plea could have immigration consequences, and each time the Defendant answered that he understood.
 

 *780
 
 The trial court then further found that defendant testified that if he had "been advised of the high likelihood that he would be deported as a result of his negotiated plea, he would not have accepted it." However, the trial court also found that "[i]n reviewing the overall reasonableness of Defendant's decision to accept the original plea agreement," there was a "sound factual basis for th[e] plea," including (1) anticipated testimony from the victim, Mr. Brown, identifying defendant, Mr. Mitchell, and Mr. Martine as being involved in the robbery, as well as their car, the weapons used, and the stolen property found in defendant's and his accomplices' possession; (2) evidence that officers apprehended defendant and the other two men 30 minutes after Mr. Brown reported the crime; and (3) Mr. Mitchell's agreement in exchange for a plea to testify that defendant was driving when the robbery was committed although Mr. Mitchell denied any weapons were used.
 

 The trial court found that had defendant proceeded to trial on the robbery with a dangerous weapon charge, he could have been sentenced to 51 to 74 months in prison and would be subject to the same immigration consequences he now faces. On the other hand, the trial court acknowledged that defendant and his father both testified as to their fears of political and ethnic persecution if defendant were to return to DRC.
 

 The trial court then determined that, given its review of defendant's testimony, the relevant immigration statutes, and Mr. Linnartz' testimony,
 

 a. Defendant's conviction constituted an "aggravated felony" under
 
 8 U.S.C. § 1101
 
 , since it carried a potential prison sentence of at least twelve months.
 

 b. Defendant therefore became "removable" and subject to deportation by accepting the plea, pursuant to
 
 8 U.S.C. § 1227
 
 , and he is not eligible for Asylum or Cancellation of Removal relief. 8 U.S.C. § 1229b ;
 
 8 U.S.C. § 1158
 
 .
 

 c. However, several other avenues of relief from deportation were (and in some cases still are) possible for Defendant, such as:
 

 i. Withholding of Removal (
 
 8 U.S.C. § 1231
 
 );
 

 *866
 
 ii. Appeal of a denial of Withholding to the Immigration Board of Appeals or the 11th Circuit Court of Appeals (8 CFE § 1003;
 
 8 U.S.C. § 1252
 
 );
 

 *781
 
 iii. Convention Against Torture ("CAT") Relief (
 
 8 C.F.R. § 208.16
 
 );
 

 iv. Stay of Removal on discretionary grounds (
 
 8 C.F.R. § 241.6
 
 ).
 

 Although these avenues were extremely difficult to achieve, according to Mr. Linnartz, defendant and his father had testified to the threat of political persecution in the Congo, and the trial court found defendant "therefore had a reasonable basis for asserting such a claim for relief."
 

 Based on these findings of fact, the trial court concluded that for trial counsel to satisfy his responsibility to advise his client regarding the immigration consequences of a plea,
 
 Padilla's
 
 "final holding" was that counsel need only " 'inform her client whether his plea carries a
 

 risk
 

 of deportation.' " (Quoting
 
 Padilla,
 

 559 U.S. at 374
 
 ,
 
 130 S.Ct. at 1486
 
 ,
 
 176 L.Ed.2d at
 
 299 ). The trial court further concluded that "Defendant's assertion that he should have been advised he 'would' be deported rather than 'could' be deported is asking for a higher standard than the United States Supreme Court has set."
 

 The trial court then distinguished
 
 Padilla
 
 on the grounds that counsel for the defendant in
 
 Padilla
 
 "incorrectly 'provided him with false assurance that his conviction would not result in his deportation[,]' " (quoting
 
 Padilla,
 

 559 U.S. at 368
 
 ,
 
 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at
 
 295 ), whereas in this case, "Defendant was correctly advised that he could be deported, and that advice was confirmed on multiple occasions throughout the colloquy." Further, the trial court noted that
 
 Padilla
 
 recognized that "when the law is not 'succinct and straightforward,' the defendant's attorney 'need do no more than advise a noncitizen client that pending criminal charges may carry a risk of immigration consequences.' " (Quoting
 
 Padilla,
 

 559 U.S. at 369
 
 ,
 
 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at
 
 296 ). He concluded that the law was not clear because "Defendant was still eligible for various forms of relief from deportation [.]" Therefore, the standard set out in
 
 Padilla
 
 "was satisfied in the present case" when defendant's attorney advised defendant that he " 'could' be deported." The trial court consequently denied defendant's MAR. Defendant timely appealed to this Court.
 

 Discussion
 

 Defendant's sole argument on appeal is that the trial court erred in denying his MAR because the trial court misapplied the standard for determining IAC under
 
 Padilla.
 
 This Court has explained,
 

 *782
 
 "When considering rulings on motions for appropriate relief, we review the trial court's order to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court."
 
 State v. Frogge,
 

 359 N.C. 228
 
 , 240,
 
 607 S.E.2d 627
 
 , 634 (2005).... However, "[i]f the issues raised by Defendant's challenge to [the trial court's] decision to deny his motion for appropriate relief are primarily legal rather than factual in nature, we will essentially use a
 
 de novo
 
 standard of review in evaluating Defendant's challenges to [the court's] order."
 
 State v. Jackson,
 
 [220] N.C.App. [1], [8],
 
 727 S.E.2d 322
 
 , 329 (2012) [.]
 

 State v. Marino,
 
 --- N.C.App. ----, ----,
 
 747 S.E.2d 633
 
 , 640 (2013),
 
 app. dismissed and disc. review denied,
 

 367 N.C. 500
 
 ,
 
 757 S.E.2d 907
 
 ,
 
 cert. denied,
 
 - -- U.S. ----,
 
 134 S.Ct. 1900
 
 ,
 
 188 L.Ed.2d 914
 
 (2014).
 

 To prevail on an IAC claim,
 

 "[F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial,
 
 a trial whose result is reliable.
 
 "
 

 State v. Braswell,
 

 312 N.C. 553
 
 , 562,
 
 324 S.E.2d 241
 
 , 248 (1985) (quoting
 
 Strickland v. Washington,
 

 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed.2d 674
 
 , 693 (1984) ).
 

 This case is the first in which our appellate courts have been called upon to interpret and apply
 
 Padilla's
 
 holding. In
 
 *867
 

 Padilla,
 

 559 U.S. at 359
 
 ,
 
 130 S.Ct. at 1477
 
 ,
 
 176 L.Ed.2d at 289-90
 
 , the defendant, who was not a United States citizen, pled guilty to transporting a large amount of marijuana, and, as a result, he was deportable under
 
 8 U.S.C. § 1227
 
 (a)(2)(B)(i) (2014).
 
 8 U.S.C. § 1227
 
 (a)(2)(B)(i) provides that any alien "convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation ... relating to a controlled substance ..., other than a single offense involving possession for one's own use of 30 grams or less of
 
 *783
 
 marijuana, is deportable" if the offense is committed after entry into the United States.
 

 After discovering that his pleas made him deportable, the defendant filed a postconviction IAC proceeding in Kentucky state court seeking to withdraw his guilty pleas.
 
 Padilla,
 

 559 U.S. at 359
 
 ,
 
 130 S.Ct. at 1478
 
 ,
 
 176 L.Ed.2d at 290
 
 . In support of his IAC claim, the defendant alleged that his plea counsel failed to advise him of the immigration consequences of his plea and, further, told him that he did not have to worry about his immigration status since he had lived in the United States for such a long period of time.
 

 Id.
 

 The defendant alleged that he relied on his counsel's erroneous advice when pleading guilty and that he would have insisted on going to trial had he received correct advice from his attorney.
 

 Id.
 

 After the defendant was denied relief in the Kentucky Supreme Court, the United States Supreme Court granted certiorari to address whether, under the Sixth Amendment right to effective assistance of counsel, defense counsel had "an obligation to advise [a client] that [an] offense to which he was pleading guilty
 
 would result in his removal
 
 from this country."
 

 Id.
 

 at 360
 
 ,
 
 130 S.Ct. at 1478
 
 ,
 
 176 L.Ed.2d at 290
 
 (emphasis added). In describing the context of its opinion, the
 
 Padilla
 
 majority noted that "[w]hile once there was only a narrow class of deportable offenses and judges wielded broad discretionary authority to prevent deportation ... deportation or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes."
 

 Id.
 

 (internal citation omitted). Consequently, "[u]nder contemporary law, if a noncitizen has committed a removable offense ..., his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General [under 8 U.S.C. § 1229b (2002) ] to cancel removal[.]"
 

 Id.
 

 at 363-64
 
 ,
 
 130 S.Ct. at 1480
 
 ,
 
 176 L.Ed.2d at 292
 
 .
 

 The
 
 Padilla
 
 majority acknowledged that, given the change in deportation law, " '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence[,]' " and "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation."
 

 Id.
 

 at 367, 368
 
 ,
 
 130 S.Ct. at 1482, 1483
 
 ,
 
 176 L.Ed.2d at 294, 295
 
 (quoting
 
 INS v. St. Cyr,
 

 533 U.S. 289
 
 , 322,
 
 121 S.Ct. 2271
 
 , 2291,
 
 150 L.Ed.2d 347
 
 , 376 (2001) ).
 

 The
 
 Padilla
 
 majority, therefore, held that "counsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation
 
 *784
 
 on families living lawfully in this country demand no less."
 

 Id.
 

 at 374
 
 ,
 
 130 S.Ct. at 1486
 
 ,
 
 176 L.Ed.2d at 299
 
 . In rejecting the argument that the duty to provide correct advice only applies when an attorney chooses to advise her client on immigration consequences, the majority observed: "It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the
 
 Strickland
 
 analysis.' "
 

 Id.
 

 at 371
 
 ,
 
 130 S.Ct. at 1484
 
 ,
 
 176 L.Ed.2d at 297
 
 (quoting
 
 Hill v. Lockhart,
 

 474 U.S. 52
 
 , 62,
 
 106 S.Ct. 366
 
 , 372,
 
 88 L.Ed.2d 203
 
 , 212 (1985) (White, J., concurring in judgment)).
 

 Indeed, the majority noted that "were a defendant's lawyer to know that a particular offense would result in the client's deportation and that, upon deportation, the client and his family might well be killed due to circumstances in the client's home country, any decent attorney would inform the client of the consequences of his plea. We think the same result should follow when the stakes are not life and death but merely 'banishment or exile [.]' "
 

 Id.
 

 at 370 n. 11,
 
 130 S.Ct. at
 
 1484 n. 11,
 
 176 L.Ed.2d at
 
 297 n. 11 (internal citation omitted) (quoting
 
 Delgadillo
 

 *868
 

 v. Carmichael,
 

 332 U.S. 388
 
 , 391,
 
 68 S.Ct. 10
 
 , 12,
 
 92 L.Ed. 17
 
 , 19 (1947) ).
 

 The
 
 Padilla
 
 majority recognized the tension between the harshness of deportation and the fact that "[i]mmigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges ... may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain."
 
 Id.
 
 at 369,
 
 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at 295-96
 
 .
 

 Given this tension, the majority set out the following Sixth Amendment duty that an attorney owes to a noncitizen defendant:
 

 The duty of the private practitioner in [unclear or uncertain] cases is ... limited. When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice ALITO [in his concurring opinion] ), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.
 
 But when the deportation consequence is truly clear ... the duty to give correct advice is equally clear.
 

 Id.,
 

 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at 296
 
 (emphasis added) (internal footnote omitted).
 

 *785
 
 In
 
 Padilla,
 
 whether the defendant was subject to mandatory deportation was "truly clear," and his appeal was "not a hard case in which to find deficiency [.]"
 

 Id.
 

 at 368, 369
 
 ,
 
 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at 295, 296
 
 . The terms of the relevant immigration statute,
 
 8 U.S.C. § 1227
 
 (a)(2)(B)(i), "[were] succinct, clear, and explicit in defining the removal consequence for [the defendant's] conviction.... [The defendant's] counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses.... The consequences of [the defendant's] plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect."
 
 Padilla,
 

 559 U.S. at 368-69
 
 ,
 
 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at 295
 
 .
 

 The
 
 Padilla
 
 majority, therefore, agreed with the defendant that, in his case, "constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation."
 

 Id.
 

 at 360
 
 ,
 
 130 S.Ct. at 1478
 
 ,
 
 176 L.Ed.2d at 290
 
 . The Supreme Court, however, remanded the case for the Kentucky courts to determine whether the defendant was prejudiced by his trial counsel's incorrect advice.
 

 Id.
 

 at 374-75
 
 ,
 
 130 S.Ct. at 1487
 
 ,
 
 176 L.Ed.2d at 299
 
 .
 

 In this case, the State asserts that
 
 Padilla
 
 still requires no more than that "counsel must inform her client whether his plea carries a
 
 risk
 
 of deportation."
 

 Id.
 

 at 374
 
 ,
 
 130 S.Ct. at 1486
 
 ,
 
 176 L.Ed.2d at 299
 
 (emphasis added). However, a complete reading of the
 
 Padilla
 
 majority opinion indicates that the quotation the State relies upon represents a defense attorney's
 
 minimum
 
 duty to the client. The Supreme Court established a bifurcated duty: when the consequence of deportation is unclear or uncertain, counsel need only advise the client of the risk of deportation, but when the consequence of deportation is truly clear, counsel must advise the client in more certain terms.
 

 Id.
 

 at 369
 
 ,
 
 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at 296
 
 . To read
 
 Padilla
 
 otherwise would disregard the majority opinion's emphasis on counsel's duty, when "the deportation consequence is truly clear," to give "correct advice."
 

 Id.
 

 The majority opinion recognized that "[i]t is quintessentially the duty of counsel to provide her client with
 
 available advice
 
 about an issue like deportation[.]"
 

 Id.
 

 at 371
 
 ,
 
 130 S.Ct. at 1484
 
 ,
 
 176 L.Ed.2d at 297
 
 (emphasis added).
 

 Moreover, Justice Alito's opinion concurring in the result confirms our interpretation of the majority opinion. Justice Alito warned, "the Court's opinion would not just require defense counsel to warn the
 
 *786
 
 client of a general
 
 risk
 
 of removal; it would also require counsel in at least some cases, to specify what the removal
 
 consequences
 
 of a conviction would be."
 

 Id.
 

 at 377
 
 ,
 
 130 S.Ct. at 1488
 
 ,
 
 176 L.Ed.2d at 301
 
 . In Justice Alito's view, the majority's approach was "problematic because providing advice on whether a conviction for a particular offense will make
 
 *869
 
 an alien removable is often quite complex."
 

 Id.
 

 Therefore, Justice Alito would have held, "an alien defendant's Sixth Amendment right to counsel is satisfied if defense counsel advises the client that a conviction may have immigration consequences, that immigration law is a specialized field, that the attorney is not an immigration lawyer, and that the client should consult an immigration specialist if the client wants advice on that subject."
 

 Id.
 

 at 388
 
 ,
 
 130 S.Ct. at 1494
 
 ,
 
 176 L.Ed.2d at 307
 
 .
 

 We hold that
 
 Padilla
 
 mandates that when the consequence of deportation is truly clear, it is not sufficient for the attorney to advise the client only that there is a risk of deportation. The State, however, alternatively contends that
 
 Padilla's
 
 holding should be limited to the facts of that case and, therefore, apply only when a noncitizen defendant pleads guilty to a deportable offense under
 
 8 U.S.C. § 1227
 
 (a)(2)(B)(i), involving crimes relating to controlled substances. The State further argues that
 
 Padilla's
 
 holding should never apply to convictions for "aggravated felon [ies]," identified as deportable offenses under
 
 8 U.S.C. § 1227
 
 (a)(2)(A)(iii), because the deportation consequences for an aggravated felony, as defined in
 
 8 U.S.C. § 1101
 
 (a)(43) (2014), can never be "truly clear."
 

 In support of its argument that deportation can never be a truly clear consequence when a defendant pleads guilty to an aggravated offense, the State cites no authority other than Justice Alito's opinion concurring in the result, which noted that whether an alien is convicted of an aggravated felony is not always easy to determine.
 
 See
 

 Padilla
 
 ,
 
 559 U.S. at 378
 
 ,
 
 130 S.Ct. at 1489
 
 ,
 
 176 L.Ed.2d at 302
 
 ("Defense counsel who consults a guidebook on whether a particular crime is an 'aggravated felony' will often find that the answer is not 'easily ascertained.' "). However, nothing in the majority opinion limits its holding to crimes relating to controlled substances or suggests that the deportation consequence of convictions under other subsections of
 
 8 U.S.C. § 1227
 
 cannot also be truly clear. Instead, the majority agreed only that immigration law is not succinct and straightforward "in
 
 many of the scenarios
 
 posited by Justice ALITO[.]"
 
 Padilla,
 

 559 U.S. at 369
 
 ,
 
 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at 296
 
 (emphasis added).
 

 However, numerous other courts considering guilty pleas to aggravated felonies have concluded that the immigration consequences of such pleas can be truly clear.
 
 See, e.g.,
 

 *787
 

 United States v. Bonilla,
 

 637 F.3d 980
 
 , 984 (9th Cir.2011) (holding, with respect to defendant who pled guilty to aggravated felony, that "[a] criminal defendant who faces almost certain deportation is entitled to know more than that it is
 
 possible
 
 that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty");
 
 Hernandez v. State,
 

 124 So.3d 757
 
 , 762 (Fla.2012) (per curiam) (holding as to guilty plea to aggravated felony that "counsel was deficient under
 
 Padilla
 
 for failing to advise [the defendant] that his plea subjected him to presumptively mandatory deportation");
 
 Encarnacion v. State,
 

 295 Ga. 660
 
 , 663,
 
 763 S.E.2d 463
 
 , 466 (2014) (holding with respect to guilty plea to aggravated felony that "[i]t is not enough to say 'maybe' when the correct advice is 'almost certainly will' " lead to deportation);
 
 Chacon v. State,
 

 409 S.W.3d 529
 
 , 537 (Mo.Ct.App.2013) (holding with respect to aggravated felony that "when the deportation consequence is clear, as it was in
 
 Padilla
 
 and as it is here, defense counsel has an equally clear duty to give correct advice");
 
 State v. Kostyuchenko,
 

 8 N.E.3d 353
 
 , 357 (Ohio Ct.App.2014) (per curiam) (holding as to aggravated felony plea that counsel " had a duty under
 
 Padilla
 
 to ascertain from the immigration statutes, and to accurately advise him, that his conviction mandated his deportation");
 
 State v. Sandoval,
 

 171 Wash.2d 163
 
 , 172,
 
 249 P.3d 1015
 
 , 1020 (2011) (en banc) (holding that defense counsel violated
 
 Padilla
 
 in connection with aggravated felony plea).
 

 We hold that
 
 Padilla
 
 is not limited to its facts and that the deportation consequences resulting from a guilty plea to an aggravated felony may, depending on the particular offense, be truly clear within the meaning of
 
 Padilla.
 
 Defendant asserts that, in this case, (1) the offenses of aiding and abetting common law robbery and conspiracy to commit common law robbery were aggravated felonies, and (2) the deportation consequences of defendant's guilty plea were truly
 
 *870
 
 clear. Therefore, according to defendant, mere advice that his guilty plea gave rise to a risk of deportation was not adequate under
 
 Padilla.
 

 The State does not seriously dispute that defendant's offenses amount to aggravated felonies.
 
 8 U.S.C. § 1101
 
 (a)(43)(G) defines "aggravated felony" to include "a theft offense ... or burglary offense for which the term of imprisonment [is] at least one year[.]" Additionally,
 
 8 U.S.C. § 1101
 
 (a)(43)(U) provides that "an attempt or conspiracy to commit an offense described in this paragraph" is an "aggravated felony." The offense of aiding and abetting common law robbery is plainly one of theft under
 
 8 U.S.C. § 1101
 
 (a)(43)(G), and the conspiracy to commit common law robbery under
 
 8 U.S.C. § 1101
 
 (a)(43)(U) is plainly a conspiracy to commit an offense under
 
 8 U.S.C. § 1101
 
 (a)(43)(G).
 
 See
 
 John Rubin and Sejal Zota,
 
 Immigration Consequences of a Criminal
 

 *788
 

 Conviction in North Carolina
 
 100 (2008) (stating that common law robbery is aggravated felony because it is theft offense under
 
 8 U.S.C. § 1101
 
 (a)(43)(G) ). Defendant was also sentenced for a term of more than a year; the fact that the court suspended his sentences is immaterial.
 
 See
 

 8 U.S.C. § 1101
 
 (a)(48)(B) ("Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.").
 

 Moreover, the relevant provisions of the United States Code plainly indicate that defendant's deportation upon entering his guilty plea was "presumptively mandatory."
 
 See
 

 Padilla,
 

 559 U.S. at 369
 
 ,
 
 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at 295, 296
 
 (finding deportation consequences "truly clear" when "[t]he consequences of
 
 Padilla's
 
 plea could easily be determined from reading the removal statute").
 

 When other courts have found deportation consequences unclear for particular guilty pleas, they have pointed to the need for trial counsel to look beyond the plain language of the United States Code in order to reach a conclusion regarding the deportation consequences for the defendant.
 
 See, e.g.,
 

 United States v. Chan Ho Shin,
 

 891 F.Supp.2d 849
 
 , 856 (N.D.Ohio 2012) ("Given the divergent views among the few circuits that had addressed the issue, and the silence of the others, this Court cannot hold that the relevant immigration statute was ... 'truly clear' at the time of [the defendant's] plea.");
 
 State v. Ortiz-Mondragon,
 

 358 Wis.2d 423
 
 , 433,
 
 856 N.W.2d 339
 
 , 344 (Wis.App.2014) ("If an attorney must search federal court and unfamiliar administrative board decisions from around the country to identify a category of elements that together constitute crimes of moral turpitude, and then determine whether a charged crime fits that category, then the law is not 'succinct, clear, and explicit.' " (quoting
 
 Padilla,
 

 559 U.S. at 368
 
 ,
 
 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at
 
 295 )),
 
 aff'd,
 

 364 Wis.2d 1
 
 ,
 
 866 N.W.2d 717
 
 (Wis.2015). In this case, however, there was no need for counsel to do anything but read the statute.
 

 Rather than argue that it was unclear whether defendant was subject to presumptive mandatory deportation, the State contends that the deportation consequences for defendant were not truly clear because of the availability of other "various forms of relief from deportation," as referenced in the trial court's order. These forms of relief include Withholding of Removal,
 
 8 U.S.C. § 1231
 
 (b)(3) (2014) (prohibiting government from deporting alien if alien's life or freedom would be threatened because of race, religion, nationality, membership in particular social group, or political opinion; denial may be appealed); Convention
 
 *789
 
 Against Torture,
 
 8 C.F.R. §§ 208.16
 
 - 18 (2014) (deferring deportation under the United States Convention Against Torture if alien can demonstrate he would be tortured if returned home); Stay of Removal,
 
 8 C.F.R. § 241.6
 
 (2014) (allowing application to local immigration director for discretionary stay of removal).
 

 According to the uncontradicted testimony of defendant's immigration law expert Mr. Linnartz, these avenues of relief from deportation were "in the realm of mathematical possibility," but such relief was a "remote possibility" at the time defendant entered his guilty plea. With respect to Withholding of Removal and the Convention Against Torture, Mr. Linnartz testified that this type of relief was rarely granted, did not confer lawful
 
 *871
 
 legal status, and the deferral of deportation would be lifted as soon as the threat to the defendant abated. With respect to the Stay of Removal, Mr. Linnartz explained that such relief was only temporary-such as in the event of a medical emergency-and was almost never granted to an alien being deported due to a criminal conviction. Mr. Linnartz emphasized that (1) none of the forms of relief would eliminate the deportation order, (2) a defendant could end up spending his life in a detention facility, (3) a defendant could be deported to a third country if there was a fear of persecution, and (4) lawful status would never be conferred.
 

 The State has cited no authority supporting its contention that the possible availability of these forms of rare relief render defendant's deportation consequences unclear. In
 
 Padilla,
 
 the majority opinion noted the potential availability to the defendant of an avenue of relief from a deportation order: 8 U.S.C. § 1229b, which grants the Attorney General discretionary authority to cancel an alien's removal.
 
 559 U.S. at 363-64
 
 ,
 
 130 S.Ct. at 1480
 
 ,
 
 176 L.Ed.2d at 292
 
 . The majority explained that a noncitizen's "removal is practically inevitable but for the possible exercise" of this discretion, but still concluded that the defendant's removal was a "presumptively mandatory" consequence and that "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence [.]"
 

 Id.
 

 at 364, 368, 369
 
 ,
 
 130 S.Ct. at 1480, 1483
 
 ,
 
 176 L.Ed.2d at 292, 295
 
 . In short,
 
 Padilla
 
 focused on whether the defendant's conviction made him deportable under
 
 8 U.S.C. § 1227
 
 and not on the availability of possible avenues of relief. If, as the
 
 Padilla
 
 Court necessarily concluded, the availability of discretionary relief under 8 U.S.C. § 1229b did not render the deportation consequences unclear, we cannot conclude that the unlikely avenues of relief that the trial court relied upon are sufficient to support a conclusion that the deportation consequences for defendant were not "truly clear."
 

 *790
 
 Moreover, we believe that
 
 Padilla's
 
 holding would be substantially undermined by the State's contention, if accepted, that the theoretical availability of relief that does not eliminate the deportation order and grant lawful status renders the law unclear. One or more of the avenues of relief relied upon by the trial court would theoretically be available to most defendants. We note that other courts have rejected the State's approach, and the State has cited no authority supporting it.
 
 See
 

 Encarnacion,
 

 295 Ga. at 663
 
 ,
 
 763 S.E.2d at 466
 
 (recognizing that counsel's advice of possibility of deportation for aggravated felony conviction pleas was incorrect despite fact that "some noncitizens convicted of an aggravated felony might avoid removal" because "those circumstances are exceptionally rare");
 
 Enyong v. State,
 

 369 S.W.3d 593
 
 , 600 (Tex.App.2012) (concluding defendant's deportation consequence for pleading guilty to aggravated felony truly clear despite State's reference to internal United States Immigration and Customs Enforcement memo encouraging its employees to use prosecutorial discretion in enforcing immigration laws),
 
 judgment vacated on other grounds,
 

 397 S.W.3d 208
 
 (Tex.Crim.App.2013) (per curiam).
 

 Consequently, we hold that the deportation consequences of defendant's guilty plea were truly clear in this case. Trial counsel was required, therefore, under
 
 Padilla,
 
 "to give correct advice" and not just advise defendant that his "pending criminal charges may carry a risk of adverse immigration consequences."
 
 559 U.S. at 369
 
 ,
 
 130 S.Ct. at 1483
 
 ,
 
 176 L.Ed.2d at 296
 
 .
 

 The trial court's findings establish only that defendant's trial counsel informed him that he could be deported, that the trial court had no control over deportation, that his plea could have immigration consequences, and that his attorney hoped that defendant would not actually be deported. While the State points to the attorney's testimony that he told defendant "you're not a legal citizen[ and] it's going to result in deportation," Mr. Thomas clarified, when asked about the accuracy of that statement, that he actually advised defendant that he "could possibly be subject to deportation." Indeed, Mr. Thomas gave defendant a false assurance when he told Judge Abernathy: "We told [defendant] we can't do anything with [deportation], and I'm hoping that my past experience doing this kind of things [sic]-
 
 *872
 
 the Congo is not one of the places they're apt to send you back to."
 
 [1]
 

 *791
 
 The trial court's findings and the evidence, therefore, show that defendant was only advised of the risk of deportation. This advice was not sufficient under
 
 Padilla
 
 because it did not adequately advise defendant of the likelihood of deportation.
 
 See, e.g.,
 

 Hernandez v. State,
 

 61 So.3d 1144
 
 , 1151 (Fla.Dist.Ct.App.2011) ("It is now the law in this and every other state that constitutionally competent counsel must advise a noncitizen/ defendant that certain pleas and judgments
 
 will,
 
 not 'may,' subject the defendant to deportation."),
 
 aff'd per curiam,
 

 124 So.3d 757
 
 (Fla. 2012) ;
 
 Encarnacion,
 

 295 Ga. at 663
 
 ,
 
 763 S.E.2d at 466
 
 ("It is not enough to say 'maybe' when the correct advice is 'almost certainly will.' " (quoting
 
 Hernandez,
 

 61 So.3d at
 
 1151 )).
 

 We need not determine precisely what advice Mr. Thomas should have given defendant because, here, there can be no question that Mr. Thomas' advice fell short of what
 
 Padilla
 
 required. Defendant has, therefore, shown that he received ineffective assistance of counsel.
 

 Turning to the question whether defendant was prejudiced by the inadequate advice, the State contends that any prejudice defendant might have suffered as a result of misadvice by Mr. Thomas was cured by the plea colloquy conducted by Judge Abernathy prior to defendant's entering his plea. In
 
 Missouri v. Frye,
 
 --- U.S. ----, ----,
 
 132 S.Ct. 1399
 
 , 1406-07,
 
 182 L.Ed.2d 379
 
 , 389 (2012) (emphasis added), the Supreme Court explained:
 

 At the plea entry proceedings the trial court and all counsel have the opportunity to establish on the record that the defendant understands ... the advantages and disadvantages of accepting [the plea deal.] ... [
 
 N]evertheless, there may be instances when claims of ineffective assistance can arise after the conviction is entered.
 
 Still, the State, and the trial court itself, have ... a substantial opportunity to guard against this contingency by establishing at the plea entry proceeding that the defendant has been given proper advice or,
 
 if the advice received appears to have been inadequate, to remedy that deficiency before the plea is accepted and the conviction entered.
 

 At the plea hearing in this case, Judge Abernathy announced that defendant's "guilty plea 'would make him subject to deportation[.]' " However, this isolated statement, when read in the context of the entire colloquy, cannot reasonably be read as advising defendant that his plea would certainly result in deportation. Immediately following this statement, Mr. Thomas interjected that defendant's plea "possibly could"
 

 *792
 
 make him subject to deportation. Then, the trial court asked defendant whether he understood that "there's a possibility, because you're not a U.S. citizen, upon your plea of guilty you could be deported from this country or denied readmission[,]" to which defendant replied that he did. Thus, the advice in the colloquy, which merely advised defendant of the risk of deportation, was incorrect and inadequate and did not cure any possible prejudice.
 
 See
 

 Enyong,
 

 369 S.W.3d at 603
 
 ("[I]t would seem illogical to ... require effective counsel to provide specific advice regarding 'clear' or 'virtually certain' immigration consequences, but then ... hold that a defendant is not prejudiced by counsel's failure to provide this constitutionally required advice simply when a trial court ... provides a boilerplate warning concerning general immigration consequences. If such general admonishments precluded a finding of prejudice, the ... holding in
 
 Padilla
 
 would be stripped of much of its force.").
 

 The question remains whether defendant has adequately demonstrated prejudice. In the plea context, "[t]he ... 'prejudice[ ]' requirement [ ] ... focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."
 
 Hill,
 

 474 U.S. at 59
 
 ,
 
 106 S.Ct. at 370
 
 ,
 
 88 L.Ed.2d at 210
 
 . Thus, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted
 
 *873
 
 on going to trial."
 

 Id.
 

 The Supreme Court in
 
 Padilla
 
 emphasized, that in applying
 
 Hill,
 
 "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."
 
 559 U.S. at 372
 
 ,
 
 130 S.Ct. at 1485
 
 ,
 
 176 L.Ed.2d at 297
 
 .
 

 In
 
 Padilla,
 
 upon remand, the Kentucky Court of Appeals addressed whether the defendant had been prejudiced by the incorrect advice he received from his trial counsel.
 
 Padilla v. Commonwealth,
 

 381 S.W.3d 322
 
 , 328 (Ky.Ct.App.2012) ("
 
 Padilla II
 
 "). In doing so, the Kentucky Court of Appeals held that a defendant need not show "that an acquittal at trial was likely."
 

 Id.
 

 The court in
 
 Padilla II
 
 explained:
 

 A reasonable probability [that a defendant, if advised adequately, would have decided to reject the plea offer] exists if the defendant convinces the court "that a decision to reject the plea bargain would have been rational under the circumstances."
 
 Padilla,
 
 [
 
 559 U.S. at 372
 
 ]
 
 130 S.Ct. at 1485
 
 [
 
 176 L.Ed.2d at
 
 297 ] . This standard of proof is "somewhat lower" than the common "preponderance of the evidence" standard.
 
 Strickland,
 

 466 U.S. at 694
 
 ,
 
 104 S.Ct. at 2068
 
 [
 
 80 L.Ed.2d at 698
 
 ].
 

 ....
 

 *793
 
 The [trial] court must determine whether the defendant's rejection of the plea offer would have been a rational choice, even if not the best choice.
 
 Necessarily, the court must consider the importance a particular defendant places upon preserving his or her right to remain in the country.
 
 A noncitizen defendant with significant ties to this country may rationally be willing to take the risk of a trial while the same decision by one who has resided in the United States for a relatively brief period of time or has no family or employment in this country may be irrational.
 

 Id.
 
 at 328-29 (emphasis added) (internal footnote omitted).
 

 Other jurisdictions addressing the question of prejudice in light of
 
 Padilla
 
 have adopted a similar approach to that taken in
 
 Padilla II. See, e.g.,
 

 Hernandez v. United States,
 

 778 F.3d 1230
 
 , 1234 (11th Cir.2015) (holding defendant alleged sufficient facts to support finding of prejudice from ineffective assistance of counsel in connection with guilty plea when defendant alleged that "he would not have pleaded guilty if a plea would have 'automatically remove[d] him from his family and from a Country he ha[s] called home all [of] his adult life' ");
 
 United States v. Urias-Marrufo,
 

 744 F.3d 361
 
 , 368 (5th Cir.2014) (finding prima facie evidence of prejudice for purposes of IAC claim when defendant swore in statement that had she known she was pleading guilty to deportable offense, she would not have pled guilty);
 
 United States v. Orocio,
 

 645 F.3d 630
 
 , 643, 645 (3rd Cir.2011) (rejecting contention that defendant must show acquittal at trial likely and finding prejudice when, "if made aware of the dire immigration consequences of the proposed guilty plea, [defendant] could have reasonably chosen to go to trial even though he faced a drug distribution charge constituting an aggravated felony"),
 
 abrogated on other grounds by
 

 Chaidez v. United States,
 
 ---U.S. ----,
 
 133 S.Ct. 1103
 
 ,
 
 185 L.Ed.2d 149
 
 (2013) ;
 
 Bonilla,
 

 637 F.3d at 984
 
 (finding district court abused its discretion when it unreasonably denied defendant's motion to withdraw his plea where "entering a plea would mean that after he served his sentence, [the defendant] would almost certainly be deported and separated from his wife and children");
 
 Commonwealth v. DeJesus,
 

 468 Mass. 174
 
 , 184,
 
 9 N.E.3d 789
 
 , 797 (2014) ("If an assessment of the apparent benefits of a plea offer is made, it must be conducted in light of the recognition that a noncitizen defendant confronts a very different calculus than that confronting a United States citizen.");
 

 *794
 

 State v. Tejeiro,
 

 345 P.3d 1074
 
 , 1084 (N.M.Ct.App.2014) ("Defendant is not required to demonstrate that he would have obtained a better result at trial than he received from his plea. He need only demonstrate a reasonable probability that he would have rejected the plea as offered had he known of its immigration consequences." (internal citation omitted)),
 
 cert. denied,
 
 2015 N.M. LEXIS 128 (N.M.2015);
 
 Kostyuchenko,
 

 8 N.E.3d at 358
 
 (finding evidence supporting prejudice where prior to plea negotiations defendant was unconcerned with deportation, yet, had defendant known plea would have resulted in deportation, defendant would have insisted on going to trial or seeking to negotiate plea that preserved eligibility for
 
 *874
 
 relief from deportation);
 
 Enyong,
 

 369 S.W.3d at 603
 
 (finding evidence of prejudice for noncitizen defendant where "appellant stated that he would not have pleaded guilty to the offenses if his trial counsel had advised him of the immigration consequences of his pleas");
 
 Sandoval,
 

 171 Wash.2d at 176
 
 ,
 
 249 P.3d at 1022
 
 (finding prejudice notwithstanding sentencing benefit of plea "[g]iven the severity of the deportation consequence");
 
 Ortega-Araiza v. State,
 

 331 P.3d 1189
 
 , 1194 (Wyo.2014) ("It would ... be entirely reasonable for [the defendant] to reject the plea and insist on going to trial (or seek a different plea agreement with lesser deportation consequence) as he was facing deportation whether he was convicted pursuant to a plea agreement or as a result of trial. Better to gamble on an acquittal at trial, than the assured conviction and deportation resulting from a guilty plea.").
 

 Some courts discussing prejudice based on insufficient advice under
 
 Padilla
 
 have, however, focused on whether there was a likelihood of acquittal at trial.
 
 E.g.,
 

 Clarke v. United States,
 

 703 F.3d 1098
 
 , 1101 (7th Cir.2013) (no possible prejudice where defendant faced almost certain conviction of aggravated felony at trial);
 
 Pilla v. United States,
 

 668 F.3d 368
 
 , 373 (6th Cir.2012) (finding no possible prejudice in light of overwhelming evidence of defendant's guilt for aggravated felony and noting that defendant cannot show prejudice on appeal "merely by telling [the Court] now that she would have gone to trial then if she had gotten different advice");
 
 Matos v. United States,
 

 907 F.Supp.2d 378
 
 , 382 (S.D.N.Y.2012) (holding that "[t]he overwhelming evidence of guilt forecloses any reasonable probability that [the defendant] would have proceeded to trial rather than accept the Government's [plea] offer" where defendant's insistence on appeal that he would have rejected plea bargain was deemed "self-serving");
 
 Mendoza v. United States,
 

 774 F.Supp.2d 791
 
 , 800 (E.D.Va.2011) (finding no possible prejudice in light of overwhelming evidence of defendant's guilt of deportable offenses and sentencing benefits defendant received from pleading guilty).
 

 *795
 
 While the United States Supreme Court in
 
 Hill
 
 stated that "[i]n many guilty plea cases ... the determination whether the error 'prejudiced' the defendant ... will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial,"
 
 474 U.S. at 59
 
 ,
 
 106 S.Ct. at 370
 
 ,
 
 88 L.Ed.2d at 210
 
 , "[t]he Supreme Court has 'never required an affirmative demonstration of likely acquittal at such a trial as the
 
 sine qua non
 
 of prejudice.' "
 
 Padilla II,
 

 381 S.W.3d at 328-29
 
 (quoting
 
 Orocio,
 

 645 F.3d at
 
 643 ). We believe cases focusing on the likelihood of acquittal rather than considering the importance a defendant places on avoiding deportation ignore the primary focus of
 
 Padilla,
 
 which was in large part the recognition that the likelihood of deportation may often be a much more important circumstance for a defendant to consider than confinement in prison for any length of time.
 
 559 U.S. at 365, 368
 
 ,
 
 130 S.Ct. at 1481, 1483
 
 ,
 
 176 L.Ed.2d at 293, 295
 
 . Thus, the consequence of deportation may, in certain cases, weigh more heavily in a defendant's risk-benefit calculus on whether he should proceed to trial. For this reason,
 
 Padilla II's
 
 analysis is persuasive, and we hold that a defendant makes an adequate showing of prejudice by showing that rejection of the plea offer would have been a rational choice, even if not the best choice, when taking into account the importance the defendant places upon preserving his right to remain in this country.
 

 In this case, because the trial court concluded that defendant had failed to show that his attorney inadequately advised him, the court never addressed the prejudice prong of defendant's IAC claim. The trial court held that defendant's decision to accept the plea was reasonable, but did not consider whether rejection of the plea would be a reasonable choice given the immigration consequences. We hold that defendant presented sufficient evidence to support a finding that rejection of the plea offer would have been a rational choice for defendant, taking into account defendant's fear of deportation. Even if the evidence against defendant may have made conviction for a deportable offense likely at trial, the evidence would permit a finding that, had Mr. Thomas provided correct advice, it would have been a rational course of action for defendant to forego the plea offered to him for the chance of acquittal at trial or even just to delay deportation.
 

 *875
 
 "Moreover, had the immigration consequences of [defendant's] plea been factored into the plea bargaining process, trial counsel may have obtained a plea agreement that would not have the consequence of mandatory deportation."
 
 Padilla II,
 

 381 S.W.3d at 330
 
 .
 
 [2]
 
 We therefore remand so that the trial court may address, in
 
 *796
 
 the first instance, whether defendant was prejudiced by his trial counsel's inadequate advice regarding the immigration consequences of his guilty plea.
 

 Conclusion
 

 We hold that the trial court's findings of fact establish under
 
 Padilla
 
 that defendant received ineffective assistance of counsel in connection with his decision whether to enter into a guilty plea. We, therefore, reverse the trial court's denial of defendant's MAR and remand for a determination whether defendant has proven the prejudice prong of his IAC claim. In the event the trial court determines that defendant has adequately shown prejudice, the trial court must set aside defendant's conviction and allow defendant to withdraw his guilty plea.
 
 State v. Moser,
 

 20 Neb.App. 209
 
 , 225,
 
 822 N.W.2d 424
 
 , 436 (2012).
 

 REVERSED AND REMANDED.
 

 Judges ELMORE and INMAN concur.
 

 [1]
 

 Mr. Thomas also testified that he told defendant he did not practice immigration law and that he offered to put defendant in touch with an immigration attorney if defendant ran into any trouble
 
 after
 
 pleading guilty. This advice would have erroneously suggested that defendant still could have done something to avoid deportation after pleading guilty.
 

 [2]
 

 We note that our own case law, consistent with other jurisdictions, forbids a finding of prejudice upon " '[a] mere allegation by the defendant that he would have insisted on going to trial [.]' "
 
 State v. Goforth,
 

 130 N.C.App. 603
 
 , 605,
 
 503 S.E.2d 676
 
 , 678 (1998) (quoting
 
 Barker v. United States,
 

 7 F.3d 629
 
 , 633 (7th Cir.1993) ). The evidence here, however, far surpasses such an allegation and affirmatively establishes circumstances demonstrating that if defendant had been properly informed of the consequences of his plea, his priority would have been avoiding deportation.