IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-843

Filed: 15 December 2020

Stokes County No. 10 CRS 051226

STATE OF NORTH CAROLINA

       v.

MOISES JEMINEZ, Defendant.

Appeal by Defendant from judgment entered 5 October 2010 by Judge Anderson D. Cromer and from order entered 15 March 2019 by Judge Angela B. Puckett in Stokes County Superior Court. Heard in the Court of Appeals 3 March 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L. Hyde, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W. Andrews, for defendant-appellant.*

MURPHY, Judge.

The trial court must make sufficient findings of fact and conclusions of law to permit appellate review of its ruling on a motion for appropriate relief. Here, we vacate in part and remand because the trial court did not make sufficient findings to allow review on appeal of Defendant's arguments underlying his motion for appropriate relief.

Further, trial courts must comply with orders from the appellate courts. Where a trial court fails to comply with our prior order, we remand for consideration of any unaddressed issue. Here, we remand for consideration of whether Defendant knowingly and voluntarily entered into a plea agreement because the trial court failed to address this issue as directed by our prior order.

## **BACKGROUND**[1]

Defendant, Moises Jeminez, is a Mexican citizen who came to the United States without documentation in 1987 at the age of seven. Defendant remained in the United States undocumented for the following thirty years until 2017. Defendant has a daughter, born in 2008, who is a United States citizen. In 2010, police found cocaine, cash, and digital scales in Defendant's home and arrested him. Defendant was indicted for possession with intent to sell or deliver a controlled substance and felony maintaining a dwelling for keeping or selling controlled substances, and charged with possession of drug paraphernalia. Defendant pleaded guilty to these charges after consulting with his attorney, who told him the guilty plea "*may* result in adverse immigration consequences." Pursuant to the plea, Defendant's charge of possession with intent to sell or deliver a controlled substance was reduced to simple

---

[1] Although some information included in this background was not within the trial court's findings of fact, we include them for completeness of the discussion on appeal. *Infra* at 5-6. In no way do we express any view as to the truth of this information not appearing within the findings of fact below, and to the extent the trial court addresses this information on remand it may set out findings of fact contrary to the background discussed here. *Infra* at 15-16, 18, 20 (discussing the trial court's incomplete factual findings).

possession of cocaine, the charges were consolidated, and Defendant received a 4 to 5 month sentence suspended for 18 months of supervised probation.

In 2017, Defendant was arrested by immigration authorities and deportation proceedings were initiated against him. Defendant's immigration attorneys informed him, but for his guilty plea in 2010, he could have applied to have his deportation cancelled under 8 U.S.C. § 1229b; however, his conviction of a controlled substance related offense rendered him ineligible for cancellation of removal.[2] Additionally, for the same reasons, Defendant was informed he is permanently inadmissible to the United States.[3] Based on these facts and his attorney's prior advice regarding the immigration consequences of pleading guilty in 2010, Defendant filed a *Motion for Appropriate Relief and Request for Temporary Stay and Suspension of The Criminal Judgment* ("MAR") alleging ineffective assistance of counsel under *Padilla v. Kentucky*, 559 U.S. 356, 176 L. Ed. 2d 284 (2010).

In his MAR, Defendant argued his guilty plea to, and subsequent conviction of, a controlled substance offense resulted in his mandatory detention under 8 U.S.C. §

---

[2] "The term 'removable' means—(A) in the case of an alien not admitted to the United States, that the alien is inadmissible under [8 U.S.C. § 1182], or (B) in the case of an alien admitted to the United States, that the alien is deportable under [8 U.S.C. § 1227]." 8 U.S.C. § 1229a(e)(2) (2010). "Removal" is a synonym for deportation. *Mellouli v. Lynch*, 575 U.S. 798, __, 192 L. Ed. 2d 60, 64 (2015) ("This case requires us to decide how immigration judges should apply a deportation (removal) provision . . . .").

[3] "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (2010).

1226(c)(1)(A), inability to take advantage of executive discretion for cancellation of removal under 8 U.S.C. § 1229b, and inadmissibility for the rest of his life under 8 U.S.C. § 1182(a)(2)(A)(i)(II).[4]  Defendant contended the loss of the exception to deportation and later admissibility following a conviction for a controlled substance were definitive and clear, and his attorney should have informed him of the consequences of his guilty plea as it related to these exceptions.

Initially, in 2017, the trial court entered an order ("the 2017 Order") denying the MAR without an evidentiary hearing.  Defendant then filed a *Petition for Writ of Certiorari*, arguing the trial court erred in denying his MAR without an evidentiary hearing.[5]  We granted this petition, vacated the 2017 Order, and remanded, stating

> [t]he petition filed in this cause by [D]efendant on 20 October 2017 and designated 'Petition for Writ of Certiorari' is allowed for the purpose of entering the following order: It appears an evidentiary hearing is required to resolve the issues of whether [D]efendant was denied effective assistance of counsel and whether his plea was knowingly and voluntarily entered.  See *Padilla v. Kentucky*, 559 U.S. 356, 176 L. Ed. 2d 284 (2010); *State v. Nkiam*, [243] N.C. App. [777], 778 S.E.2d 863 (2015), *discretionary review improvidently allowed*, 369 N.C. 61,

---

[4] In Defendant's MAR, he refers to these statutes using their Immigration and Nationality Act ("INA") citations.  We note INA 236(c)(1)(A) corresponds with 8 U.S.C. § 1226(c)(1)(A), INA 212(a)(2) corresponds with 8 U.S.C. § 1182(a)(2), and INA 240A(b) corresponds with 8 U.S.C. § 1229b(b).

[5] Although Defendant's *Petition for Writ of Certiorari* is not in our Record, it is included in the record on appeal for COA P17-778, in which we granted Defendant's *Petition for Writ of Certiorari*. Therefore, we take judicial notice of its content because it appears within the record of the interrelated proceeding, with the same parties, and is referred to by Defendant.  *See Lineberger v. N.C. Dep't of Corr.*, 189 N.C. App. 1, 6, 657 S.E.2d 673, 677, *aff'd in part, review dism. in part,* 362 N.C. 675, 669 S.E.2d 320 (2008) (citing *West v. G. D. Reddick, Inc.,* 302 N.C. 201, 202, 274 S.E.2d 221, 223 (1981)) ("In addition to the record on appeal, appellate courts may take judicial notice of their own filings in an interrelated proceeding.").

791 S.E.2d 457 (2016). Accordingly, the order filed 9 October 2017 by Judge Anderson D. Cromer denying [D]efendant's motion for appropriate relief without a hearing is hereby vacated and the matter remanded for an evidentiary hearing pursuant to N.C.[G.S.] 15A-1420(c)(4) and entry of an order pursuant to N.C.[G.S.] 15A-1420(c)(7). A copy of this order shall be mailed to the senior resident superior court judge and district attorney of Judicial District 17B and to the Office of the Appellate Defender.

After conducting an evidentiary hearing in 2019, the trial court entered an order ("the 2019 Order"), as follows:

<u>[FINDINGS] OF FACT</u>

1. On [3 June 2010] a search warrant was executed on [] Defendant's residence and [] Defendant was charged with Possession With Intent to Manufacture, Sell and Deliver a Schedule II Controlled Substance, Maintaining a Dwelling for the Keeping of Controlled Substances, and Possession of Drug Paraphernalia.

2. On [7 June 2010] Brandon West was appointed to represent [] Defendant.

3. [] Defendant is not a citizen of the United States of America and is an undocumented Defendant.

4. On [5 October 2010] [] Defendant pled guilty in Stokes County Superior Court to Possession of Cocaine, Maintaining a Dwelling for the Keeping of Controlled Substances and Possession of Drug Paraphernalia. The charges were consolidated and [] Defendant received a probationary sentence.

5. [] Defendant was advised by his attorney and by the Court that his plea to the felonies *may* result in his deportation from this country, his exclusion from this

country or the denial of his naturalization under federal law.

6. [] Defendant's plea resulted in convictions that could be classified as "presumptively mandatory" deportation.   [] [D]efendant did not understand and was not advised by Mr. West of this fact.

7. In 2017 [] Defendant was picked up and ultimately deported from the United States.

CONCLUSIONS OF LAW

1. Under *Padilla v. Kentucky,* 559 U.S. 356, 176 L. Ed. 2d 284, 130 S. Ct. 1473 (2010), giving incorrect advice regarding the immigration consequences of a guilty plea may constitute Ineffective Assistance of Counsel.   The North Carolina Court of Appeals in *State v. Nkiam,* 243 N.C. App. 777 (2015) held that in cases where the deportation consequences of [a] defendant's plea were "truly clear" the trial counsel is required to "give correct advice" and not just to advise [a] defendant that his "pending criminal charges may carry a risk of adverse immigration consequences."   Mr. West failed to do so. However, the Court must also examine whether there was actual prejudice to [] [D]efendant for Mr. West's failure to fully advise him.

2. The Court next considers the prejudice prong of [] [D]efendant's claim for IAC.   The State argues that [] Defendant was not prejudiced because he was an undocumented [D]efendant and was subject to being deported at any time regardless of whether he was convicted of any crime in this case.

3. The question of prejudice in a case where the defendant is undocumented and already subject to deportation has not been directly addressed in North Carolina.  However, many jurisdictions throughout the United States, both state and federal courts (including the 4th Circuit), have

addressed the issue. There is an almost unanimous line of authority finding there is no showing of prejudice where, as in this case, the defendant was already subject to deportation. See [non-binding cases].

4. In this case, [] Defendant was here illegally without documentation. He was deported in 2017 nearly 7 years after his conviction. [] [D]efendant was subject to being deported regardless of his plea in this criminal case. [Defendant] did not show he was prejudiced by Mr. West's failure to tell him anything other than he *may* be deported if he pled guilty because he was already subject to deportation regardless of whether he was convicted in this case. [] Defendant could still have been subject to deportation even if he had been acquitted of the charges he pled guilty to. He was subject to deportation per se on account of his unlawful status. [] [D]efendant presented no evidence that in 2017 his fate would have been different had his defense counsel obtained a different disposition of his cases.

Therefore, [] Defendant has failed to prove he was prejudiced as a result of his attorney's lack of correct advice. As a result [] [D]efendant's motion for appropriate relief on the basis of ineffective assistance of counsel fails.

No findings of fact or conclusions of law in the 2019 Order directly resolve "whether [Defendant's] plea was knowingly and voluntarily entered." Similarly, no findings of fact or conclusions of law address Defendant's claims regarding mandatory detention, cancellation of removal, and/or inadmissibility.

## ANALYSIS

"When considering rulings on motions for appropriate relief, we review the trial court's order to determine 'whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether

the conclusions of law support the order entered by the trial court.'" *State v. Frogge*, 359 N.C. 228, 240, 607 S.E.2d 627, 634 (2005) (quoting *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982)). "'When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion. However, the trial court's conclusions are fully reviewable on appeal.'" *State v. Lutz*, 177 N.C. App. 140, 142, 628 S.E.2d 34, 35 (2006) (quoting *State v. Wilkins*, 131 N.C. App. 220, 223, 506 S.E.2d 274, 276 (1998)).

## A. Ineffective Assistance of Counsel

In *Padilla v. Kentucky,* 559 U.S. 356, 176 L. Ed. 2d 284 (2010), the United States Supreme Court held *Strickland v. Washington*[6] applies to ineffective assistance of counsel ("IAC") for deportation and trial counsel must advise their

---

[6] Under *Strickland v. Washington,*

> [a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). Deficiency is shown where the representation "fell below an objective standard of reasonableness." *Id*. at 687-88, 80 L. Ed. 2d at 693. Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 80 L. Ed. 2d at 698.

clients "whether [a] plea carries a risk of deportation." 559 U.S. at 366, 374, 176 L.

Ed. 2d at 294, 299.

> When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id*. at 369, 176 L. Ed. 2d at 296. "It is quintessentially the duty of counsel to provide

her client with available advice about an issue like deportation and the failure to do

so 'clearly satisfies the first prong of the *Strickland* analysis.'" *Id*. at 371, 176 L. Ed.

2d at 297, (quoting *Hill v. Lockhart*, 474 U.S. 52, 62, 88 L. Ed. 2d 203, 212, (1985)

(White, J., concurring in judgment)). In terms of prejudice, the Court stated, "to

obtain relief on this type of claim, a petitioner must convince the court that a decision

to reject the plea bargain would have been rational under the circumstances." *Id*. at

372, 176 L. Ed. 2d at 297 (Citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486, 145

L.Ed.2d 985, 997, 1000-01 (2000)).

We addressed *Padilla* in *State v. Nkiam*, in which we observed "*Padilla*

mandates that when the consequence of deportation is truly clear, it is not sufficient

for the attorney to advise the client only that there is a risk of deportation." *State v.

Nkiam,* 243 N.C. App. 777, 786, 778 S.E.2d 863, 869 (2015). When discussing

prejudice, we stated

> [i]n the plea context, "[t]he . . . 'prejudice[]' requirement[] . . . focuses on whether counsel's constitutionally ineffective

> performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370, 88 L. Ed. 2d at 210. Thus, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. The Supreme Court in *Padilla* emphasized, that in applying *Hill*, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." 559 U.S. at 372, 130 S. Ct. at 1485, 176 L. Ed. 2d at 297.

*Id.* at 792, 778 S.E.2d at 872-73. We further observed

> [w]hile the United States Supreme Court in *Hill* stated that "[i]n many guilty plea cases . . . the determination whether the error 'prejudiced' the defendant . . . will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial," 474 U.S. at 59, 88 L. Ed. 2d at 210, 106 S. Ct. at 370, "[t]he Supreme Court has 'never required an affirmative demonstration of likely acquittal at such a trial as the *sine qua non* of prejudice.'" *Padilla II*, 381 S.W.3d at 328-29 (quoting *Orocio,* 645 F.3d at 643). We believe cases focusing on the likelihood of acquittal rather than considering the importance a defendant places on avoiding deportation ignore the primary focus of *Padilla*, which was in large part the recognition that the likelihood of deportation may often be a much more important circumstance for a defendant to consider than confinement in prison for any length of time. 559 U.S. at 365, 368, 176 L. Ed. 2d at 293, 295, 130 S. Ct. at 1481, 1483. Thus, the consequence of deportation may, in certain cases, weigh more heavily in a defendant's risk-benefit calculus on whether he should proceed to trial. *For this reason, . . . we hold that a defendant makes an adequate showing of prejudice by showing that rejection of the plea offer would have been a rational choice, even if not the best choice, when taking into account the importance the defendant places upon preserving his right to remain in this country.*

*Id*. at 795, 778 S.E.2d at 874 (emphasis added).

In *Lee v. United States,* 137 S. Ct. 1958, 198 L. Ed. 2d 476 (2017), the United

States Supreme Court similarly interpreted prejudice in this context, holding

> [w]hen a defendant claims that his counsel's deficient
> performance deprived him of a trial by causing him to
> accept a plea, the defendant can show prejudice by
> demonstrating a reasonable probability that, but for
> counsel's errors, he would not have pleaded guilty and
> would have insisted on going to trial.

*Lee* at 1965, 198 L. Ed. 2d at 484-485. The United States Supreme Court also

analyzed this issue according to the standard in *Padilla* that required "a defendant

'[to] convince the court that a decision to reject the plea bargain would have been

rational under the circumstances.'" *Id*. at 1968, 198 L. Ed. 2d at 488 (citing *Padilla,*

559 U.S. at 372, 176 L. Ed. 2d at 297).

Applying the above binding decisions, we first analyze Defendant's allegations

of deficient performance according to whether each immigration statute implicated

was "truly clear," and thus required trial counsel to provide Defendant with correct

legal advice regarding them. *See Padilla,* 559 U.S. at 369, 176 L. Ed. 2d at 296. If

"truly clear," we then analyze prejudice according to whether Defendant has shown a

"reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial[,]" which can be accomplished by

"convinc[ing] the court that a decision to reject the plea bargain would have been

rational under the circumstances." *Lee,* 137 S. Ct. at 1965, 1968, 198 L. Ed. 2d at 484-485, 488; *accord Nkiam,* 243 N.C. App. at 792, 795, 778 S.E.2d at 872-873, 874.

**1. Deportability under 8 U.S.C. § 1227(a)(2)(B)(i)**

The trial court found, although "Defendant's plea resulted in convictions that could be classified as 'presumptively mandatory' deportation[,]"[7] Defendant was not prejudiced because he was "subject to deportation per se" due to his illegal presence in the country. As a preliminary matter, we note Defendant's guilty plea to a drug related offense did not impact whether Defendant was "subject to deportation." We believe the trial court was under the impression Defendant's conviction of controlled substance related charges made him deportable under 8 U.S.C. § 1227(a)(2)(B)(i), which reads "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, [or] the United States, . . . relating to a controlled substance . . . is deportable." 8 U.S.C. § 1227(a)(2)(B)(i) (2010). Although the United States Supreme Court held this statute has clear deportation consequences in *Padilla*, this provision does not apply here because Defendant was never "admitted." *See Padilla,* 559 U.S. at 368-69, 176 L. Ed. 2d at 295; *See* 8 U.S.C. § 1101(a)(13)(A) (2010) ("The terms 'admission' and 'admitted' mean, with respect to

---

[7] We recognize this language comes from the analysis of 8 U.S.C. § 1227(a)(2)(B)(i) in *Padilla*. *Padilla*, 559 U.S. at 368-69, 176 L. Ed. 2d at 295 ("The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.").

an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.").

As a result, there could not have been deficient performance by Defendant's trial counsel in failing to advise Defendant of the consequences of 8 U.S.C. § 1227(a)(2)(B)(i). Similarly, Defendant could not be prejudiced by not being informed of a statute that does not apply to him. To the extent the trial court concluded Defendant could not show prejudice resulting from this statute, it was correct.[8]

**2. Mandatory Detention under 8 U.S.C. § 1226(c)(1)(A)**

In Defendant's MAR, he refers to mandatory detention under 8 U.S.C. § 1226(c)(1)(A), stating

> [d]ue to his conviction for a controlled substance offense, among other things, he is subject to mandatory detention[.] . . . Had Defendant been given specific and correct advice that the guilty plea was almost certainly going to result in his future deportation . . . Defendant may have not been as motivated in pleading guilty . . . .

8 U.S.C. § 1226(c)(1)(A) reads "[t]he Attorney General shall take into custody any alien who . . . is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A) (2010). 8 U.S.C. §

---

[8] The trial court was also correct in concluding Defendant was already subject to deportation on the basis of being within the country without documentation. *See* 8 U.S.C. § 1182(a)(6)(A)(i) (2010) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."); 8 U.S.C. § 1227(a)(1)(A) (2010) ("Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable."). Since 8 U.S.C. § 1227(a)(2)(B)(i) did not make Defendant deportable, 8 U.S.C. § 1227(a)(1)(A) was the basis for Defendant's deportation.

1182(a)(2) reads, in relevant part, "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21), . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(II) (2010); *see* 21 U.S.C. § 802(6) (2010) ("The term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."); 21 U.S.C. § 812 (2010); 21 C.F.R. § 1308.12(b)(4) (2010) (cocaine is a schedule II controlled substance).

The trial court did not address mandatory detention or the related statute in its 2019 Order. However, on appeal Defendant makes no argument about mandatory detention under 8 U.S.C. § 1226(c)(1)(A). As a result, for the purposes of this appeal this argument is deemed abandoned and we do not address it. N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

**3. Discretionary Cancellation of Removal under 8 U.S.C. § 1229b(b)(1)**

In his MAR, Defendant argues

> [d]ue to his conviction for a controlled substance offense . . . , he is . . . not eligible for cancellation of removal, which is his most promising form of relief from removal. . . . As a result of the plea, Defendant faces almost certain deportation from the United States.

8 U.S.C. § 1229b(b)(1), which establishes cancellation of removal, reads

> [t]he Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—
> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
> (B) has been a person of good moral character during such period;
> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1) (2010). This statute is "truly clear" in terms of its application to someone convicted of a controlled substance offense; according to 8 U.S.C. § 1229b(b)(1)(C), if a defendant is convicted of an offense under 8 U.S.C. § 1227(a)(2), then he is ineligible for cancellation of removal.[9] As described above, 8 U.S.C. § 1227(a)(2) includes convictions related to controlled substances, such as cocaine.

In order for trial counsel to have been obligated to inform Defendant of the impact of his conviction on the availability of cancellation of removal under 8 U.S.C. § 1229b(b)(1), the statute must be potentially available to Defendant. However, we

---

[9] The United States Supreme Court suggested this is a clear consequence in *Padilla,* stating "if a noncitizen has committed a removable offense . . . , his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses. *See* 8 U.S.C. § 1229b. Subject to limited exceptions, this discretionary relief is not available for an offense related to trafficking in a controlled substance." 559 U.S. at 363-64, 176 L. Ed. 2d at 292. Although it only discussed trafficking, when read in conjunction with the language of the statute, it is "truly clear" "this discretionary relief is not available for an offense related to" controlled substances in general. *Id.*

are unable to determine this on appeal. In the trial court's order, there were no findings of fact regarding how long Defendant had been physically present in the country, whether Defendant had otherwise been a person of good moral character during this time period, whether he has other convictions implicating 8 U.S.C. § 1229b(b)(1)(C), or whether his "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."[10]   8 U.S.C. § 1229b(b)(1)(D) (2010). In the absence of any of these findings, we cannot determine if the statute was available to Defendant.[11] Therefore, we must remand for the trial court to first make findings regarding the availability of cancellation of removal under 8 U.S.C. § 1229b(b)(1) to Defendant. *State v. Graham*, 841 S.E.2d 754, 771 (N.C. Ct. App. 2020) *temporary stay and discretionary review granted in part on separate issue*, 374 N.C. 428, 839 S.E.2d 352 (Mem), 375 N.C. 272, 845 S.E.2d 789 (Mem) (2020) ("A trial court must make sufficient findings of fact and conclusions of law [in its order on an MAR] to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law.").

---

[10] Some discussion of Defendant's daughter occurred at the hearing and the trial court must evaluate this information considering the statutory requirements for cancellation of removal.

[11] We note, because the invocation of this statute is within the authority of the United States Attorney General, the trial court cannot determine that Defendant has a meritorious claim under this statute—it simply must determine if it is available to Defendant.

Assuming 8 U.S.C. § 1229b(b)(1) is available to Defendant, the statute is "truly clear" about the impact of a controlled substance conviction on the availability of discretionary cancellation of removal and trial counsel was required under *Padilla* to inform Defendant of its impact on his status. The legal advice provided by trial counsel to Defendant informed him "that his plea to the felonies *may* result in his deportation from this country, his exclusion from this country or the denial of his naturalization under federal law." Assuming 8 U.S.C. § 1229b(b)(1) applied to Defendant, such advice would constitute deficient performance; correct advice on the clear impact of the statute would have informed Defendant that his guilty plea and convictions on charges related to cocaine would result in ineligibility for cancellation of removal.

Although we can conduct a limited analysis of deficiency relying on the findings of fact below, on appeal we are unable to determine prejudice. In order to determine if Defendant was prejudiced by trial counsel's failure to advise him of the impact of a guilty plea to a controlled substances charge on cancellation of removal under 8 U.S.C. § 1229b, the trial court must have made findings of fact and conclusions of law regarding whether Defendant "demonstrat[ed] a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee,* 137 S. Ct. at 1965, 1968, 198 L. Ed. 2d at 484-485, 488 (internal marks

omitted); *accord Nkiam,* 243 N.C. App. at 792, 795, 778 S.E.2d at 872-873, 874.  We

note Defendant, in his affidavit in support of his MAR, claimed:

> I was not aware that the immigration consequences of my
> plea were so serious, permanent, and definite.  If I was
> aware of the specific immigration consequences of the plea,
> I would have been less inclined to assist [a co-defendant] in
> getting her criminal charges dismissed, I would have
> attempted to negotiate a more immigration-friendly plea
> agreement, or I would have litigated this possession case,
> even if the risk involved potentially serving an active term
> of imprisonment in the North Carolina Department of
> Corrections.

The trial court must determine the credibility of this statement in its analysis under

*Lee*.[12]  *Lee*, 137 S. Ct. at 1965, 198 L. Ed.2d at 484-485.  Here, the findings of fact

made by the trial court do not allow us to review the prejudice inquiry because we do

not have any indication as to the importance Defendant placed on remaining in the

country.  Therefore, we must remand for consideration of the importance Defendant

placed on remaining in the country, including, but not limited to, evaluation of the

credibility of Defendant's affidavit alleging he would not have accepted the plea deal.

*Graham*, 841 S.E.2d at 771.

---

[12] *See State v. Howard*, 247 N.C. App. 193, 210, 783 S.E.2d 786, 798 (2016) ("[A recanting witness] should have been questioned about whether his recantation was truthful, or merely a product of [the] defendant's direction as to what to state.  Accordingly, an evidentiary hearing was required in order to assess the truthfulness of [the recanting witness's] affidavit."); *State v. Brigman*, 178 N.C. App. 78, 94-95, 632 S.E.2d 498, 509 (2006) ("Based on the record before us, we cannot determine the veracity of [a recanting witness's] testimony.  Nor can we discern whether there is reasonable possibility that a different result would have been reached at trial had [the witness's] testimony at trial been different or non-existent.  Accordingly, we must remand the [MAR] based upon her alleged recantation to the trial court for an evidentiary hearing.").

**4. Inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(II)**

In his MAR, Defendant argues "the plea [to and conviction of a controlled substance offense] made Defendant inadmissible to the United States for life, absent a couple of unusual exceptions."

8 U.S.C. § 1182(a)(2)(A)(i)(II) reads,

> . . . any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—
> . . .
> (II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21),
>
> is inadmissible.

8 U.S.C. § 1182(a)(2)(A)(i)(II) (2010). As previously discussed, this statute applies to Defendant's convictions related to cocaine. *See* 21 U.S.C. § 802(6) (2010) ("The term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."); 21 U.S.C. § 812 (2010); 21 C.F.R. § 1308.12(b)(4) (2010) (cocaine is a schedule II controlled substance). The language of this statute is "truly clear" in establishing that an alien is permanently inadmissible if he has been convicted of a controlled substance offense.

Additionally, it is "truly clear" this statute had an impact on Defendant's future admissibility. Had Defendant not been removed for a conviction related to controlled substances, he would have been inadmissible for only 10 years. *See* 8 U.S.C. §

1182(a)(9)(B)(i)(II) (2010) ("Any alien (other than an alien lawfully admitted for permanent residence) who . . . has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States[] is inadmissible."). As a result, trial counsel had an obligation to inform Defendant, prior to his guilty plea to controlled substance charges, of the consequences of such a conviction on his future admissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(II). By advising Defendant simply that his conviction "*may* result in his deportation from this country, his exclusion from this country or the denial of his naturalization under federal law[,]" when the conviction clearly would result in Defendant's permanent exclusion from the country, absent some rare exceptions, trial counsel's advice was deficient under *Strickland* and *Padilla*.

However, like with cancellation of removal under 8 U.S.C. § 1229b(b)(1), we are unable to determine on appeal if Defendant was prejudiced by the failure to provide correct advice regarding future inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(II). In order to determine if Defendant was prejudiced by trial counsel's deficient advice, we must evaluate whether Defendant "demonstrat[ed] a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee,* 137 S. Ct. at 1965, 1968, 198 L. Ed. 2d at 484-485, 488 (internal marks omitted); *accord Nkiam,* 243 N.C. App. at 792,

795, 778 S.E.2d at 872-873, 874. For the same reasons as above, the findings of fact made by the trial court do not allow us to analyze prejudice. It is necessary to remand for consideration of the importance Defendant placed on remaining in the country, including evaluation of the credibility of Defendant's affidavit alleging he would not have accepted the plea deal, to determine prejudice resulting from the deficient advice provided regrading 8 U.S.C. § 1182(a)(2)(A)(i)(II) and 8 U.S.C. § 1229b(b)(1). *Graham*, 841 S.E.2d at 771.

## B. Trial Court's Compliance with Our Prior Order

The trial court erred in failing to review whether Defendant's plea was knowingly and voluntarily entered as directed by our 30 October 2017 order. Our order stated,

> [i]t appears an evidentiary hearing is required to resolve the *issues* of *whether* [D]efendant was denied effective assistance of counsel *and whether* his plea was knowingly and voluntarily entered. . . . Accordingly, the order filed 9 October 2017 . . . denying [D]efendant's motion for appropriate relief without a hearing is hereby vacated and the matter *remanded for an evidentiary hearing . . . and entry of an order pursuant to [N.C.G.S. §] 15A-1420(c)(7)*.

(Emphasis added). As ordered, there were two distinct issues—(1) the potential ineffective assistance of counsel and (2) whether Defendant's plea was knowingly and voluntarily entered—as we used the word "issues" and prior to each issue stated "whether." Additionally, the trial court recognized them as two distinct issues during the hearing on 14 March 2019.

- 21 -

Defendant's MAR supports such a reading as it lists these as two related, but separate grounds. Our prior order required the trial court to address the content of the MAR when it ordered the trial court to make "entry of an order pursuant to [N.C.G.S. §] 15A-1420(c)(7)." N.C.G.S. § 15A-1420(c)(7) states:

> The court must rule upon the motion [for appropriate relief] and enter its order accordingly. When the motion is based upon an asserted violation of the rights of the defendant under the Constitution or laws or treaties of the United States, the court must make and enter conclusions of law and a statement of the reasons for its determination to the extent required, when taken with other records and transcripts in the case, to indicate whether the defendant has had a full and fair hearing on the merits of the grounds so asserted.

N.C.G.S. § 15A-1420(c)(7) (2019). In addition to our phrasing, our reference to this statute in our prior order directed the trial court to address the merits of all grounds asserted in Defendant's MAR, including if Defendant's plea was knowingly and voluntarily entered.[13]

Despite our prior order instructing the trial court to have an evidentiary hearing and enter an order under N.C.G.S. § 15A-1420(c)(7), the trial court failed to address "whether [Defendant's] plea was knowingly and voluntarily entered" in the 2019 Order. Our Supreme Court has held

> courts, whose judgments and decrees are reviewed by an appellate court of errors, must be bound by and observe the

---

[13] Although both our phrasing and reference to the statute are relevant here in determining if the trial court complied with our prior order, each of these failures would independently be sufficient to require remand.

- 22 -

judgments, decrees and orders of the latter court, within its jurisdiction. Otherwise the courts of error would be nugatory and a sheer mockery. There would be no judicial subordination, no correction of errors of inferior judicial tribunals, and every court would be a law unto itself.
. . .
[W]hen it comes to our attention that a lower court has failed to comply with the opinion of this Court, whether through insubordination, misinterpretation or inattention, this Court will, in the exercise of its supervisory jurisdiction, *ex mero motu* if necessary, enforce its opinion and mandate in accordance with the requirements of justice.

*Collins v. Simms*, 257 N.C. 1, 8, 10, 125 S.E.2d 298, 303, 304-05 (1962). The trial court did not satisfy our earlier order and we remand the case with our prior instructions to address "whether [Defendant's] plea was knowingly and voluntarily entered."

## **CONCLUSION**

Trial courts must make sufficient findings of fact and conclusions of law to permit appellate review of an order denying an MAR. When a trial court fails to do so, we must remand. Here, because there are no findings of fact or conclusions of law addressing Defendant's claimed loss of discretionary cancellation of removal and future admissibility, as argued in his MAR, we cannot review these issues on appeal and must remand for consideration.

Our orders to a trial court are binding. When a trial court has not fully complied with our prior order, we must act appropriately to ensure our mandate is enforced. In this case, the trial court's failure to address "whether [Defendant's] plea

was knowingly and voluntarily entered" in contravention of our prior order requires us to remand for determination of said issue.

For the foregoing reasons, we vacate the trial court's order denying Defendant's MAR.  We remand for entry of a new MAR order, and an evidentiary hearing if necessary, consistent with this opinion.

VACATED IN PART; REMANDED.

Judges BRYANT and STROUD concur.